UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DUSTIN SHEPLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02927-SEB-KMB |
| | ) | |
| S&H TRUCKING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant S&H Trucking, Inc.'s ("S&H Trucking") Motion for Summary Judgment, filed on January 27, 2023, pursuant to Federal Rule of Civil Procedure 56. ECF No. 35. Plaintiff Dustin Shepler ("Mr. Shepler") claims pursuant to 29 U.S.C. § 216(b)[1] that his former employer, S&H Trucking, failed to compensate him for his overtime hours, in violation of the Fair Labor Standards Act ("FLSA"). S&H Trucking maintains that it properly paid Mr. Shepler for all the hours he worked, including travel time and overtime hours, as required under the FLSA. For the reasons explained below, S&H Trucking's Motion for Summary Judgment is **GRANTED**.

---

[1] Though Mr. Shepler alleges that S&H Trucking violated the FLSA by failing to pay him and "other similarly-situated dump truck drivers who have been employed by Defendant during the applicable statutory period," Compl. ¶ 6, ECF No. 1, he has not sought conditional certification as required for bringing a collective action under the FLSA. *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 751 n.1 (7th Cir. 2022) ("[A] collective action under the FLSA includes only employees who affirmatively opt in to the collection," which can be accomplished by pursuing "'conditional certification' and sen[ding] notice to the putative collective members . . . .") (citing *Smith v. Professional Transportation, Inc.*, 5 F.4th 700, 703 (7th Cir. 2021)). Thus, our decision is limited to an analysis of the merits of his individual claims.

1

## I.  STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (italics in original). A fact is material if it "might affect the outcome of the suit," and a dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party seeking summary judgment must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on files, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-moving party bears the burden of proof at trial, the movant "may discharge its burden by showing an absence of evidence to support the non-moving party's case." *Id.* at 325. To prevent summary judgment, the non-moving party "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (2007).

Because "[d]iscerning the existence of a 'genuine dispute as to any material fact' can be tedious and time consuming," the Federal Rules "require[e] a 'party asserting that a fact . . . is genuinely disputed' to support that position by citing 'particular parts of materials in the record.' " *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020)

(quoting Fed. R. Civ. P. 56(c)(1)). Our Local Rules also require parties to "submit factual statements to assist with identifying and isolating the disputed from the undisputed—all to help the court assess whether a particular claim should proceed to trial or instead can be resolved on the existing record." *Id.* Accordingly, the non-moving party must respond with a "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. Local Rule 56-1. "Such statements should contain only material facts, not mere background facts, and must state facts, not the party's argument." *Knowles, Tr. of Bricklayers of Ind. Ret. Fund v. Rosa Mosaic & Tile Co.*, 2023 WL 2612446, at *2 (S.D. Ind. Mar. 23, 2023) (J., Barker) (citations and alterations omitted).

"[R]equiring the district court to sift through 'improper denials and legal argument in search of a genuinely disputed fact' would defeat the purpose" of Local Rule 56-1. *Hinterberger*, 966 F.3d at 529 (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524 (7th Cir. 2000)). Therefore, "[f]act disputes that are irrelevant to the legal question will not be considered." *Kelley v. Costco Wholesale Corp.*, 2023 WL 1782688, at *1 (S.D. Ind. Feb. 3, 2023) (citing *Anderson*, 477 U.S. at 248).

"The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). When it becomes clear that the non-moving party will be unable to "satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated." *Celotex*, 477 U.S. at 322. "Further, a failure to prove one essential element 'necessarily renders all other facts

3

immaterial.' " *Vaughn v. Radio One of Indiana, L.P.*, 151 F.Supp.3d 877, 885 (S.D. Ind. 2015) (J., Barker) (quoting *Celotex*, 477 U.S. at 323).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

We pause briefly here at the outset to acknowledge Mr. Shepler's summary judgment briefing practices that have complicated the court's already "tedious and time consuming task." *Hinterberger*, 966 F.3d at 527. Our Local Rule expressly requires that citations must "refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found," yet Mr. Shepler has repeatedly shirked that responsibility, apart from certain citations to his deposition transcript, thus shifting the heavy lifting to the court and to Defendant. S.D. Ind. L.R. 56-1(e); Pl.'s Br. Opp'n Summ. J. at 1, 3–4 , ECF No. 47 (repeatedly supporting factual assertions with citations to "Ex. C," "Ex. D," or the like, without providing precise page or paragraph numbers); *see also Bluestein v. Central Wisconsin Anesthesiology, S.C.*, 769 F.3d 944, 944 n.1 (7th Cir. 2014) (noting that "a party genuinely disputing a fact must support that assertion by citing to particular parts of the record"). Despite Mr. Shepler's obligation to demonstrate any and all material factual disputes, he has inexplicably dedicated a considerable portion of his "Statement of Disputed Material Facts" to regurgitating many of the background facts already detailed by S&H Trucking. Other purportedly disputed facts alleged by Mr. Shepler are entirely immaterial to the elements of his FLSA claim, creating distractions from the true nature of his claim.[2]

---

[2] For example, he alleges that "[i]n retaliation for having to pay his employers [sic] for travel time, Huntzinger gave Mr. Shepler a write up." ECF No. 47 at 3. Notwithstanding the potential

Insofar as Mr. Shepler has left unchallenged S&H Trucking's version of the facts, as required by the summary judgment rules and Local Rule 56-1, we shall treat the following facts as undisputed, while still "view[ing] the record in the light most favorable to the non-moving party and draw[ing] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

A.     **Mr. Shepler's Employment at S&H Trucking**

From May 15, 2015, to November 29, 2021, Mr. Shepler worked as a dump truck driver for S&H Trucking, an Indiana based business that provides various kinds of transportation services to quarries and asphalt road construction companies. Def.'s Br. Supp. Mot. Summ. J. at 1, ECF No. 36. Mr. Shepler performed both quarry and asphalt work[3] for S&H Trucking, hauling stone and aggregate materials primarily for Irving Materials Inc. ("IMI") and transporting asphalt materials primarily for E&B Paving. ECF No. 47 at 1.

Generally, Mr. Shepler's quarry and asphalt workdays each began in the same way: after he arrived at the S&H Trucking shop ("shop"), he clocked in, retrieved the keys to operate his work truck, and completed a pre-trip inspection process of the vehicle. Shepler Dep. 41:14–24, ECF No. 47-2. He recorded these "pre-trip" activities on his Driver's Daily Report ("DDR") along with a time stamp of his clock-in time and a list of his assigned destinations for the day. *Id.* 87:9–21.

---

significance of that fact in a different cause of action, Mr. Shepler fails to explain how it affects the outcome of his FLSA claim for unpaid overtime.
[3] The parties sometimes reference quarry work as "tonnage/stockpile work" or "pit time." Similarly, asphalt work is sometimes referred to as "paving work." For purposes of this Order, we refer to these as quarry work and asphalt work, respectively.

Quarry work destinations ordinarily involved one of IMI's sites in Pendleton, Stoney Creek, North Anderson, or Anderson, Indiana. S&H Trucking required drivers scheduled for quarry work to arrive at the shop twenty to thirty minutes "prior to the quarry reporting time."[4] Huntzinger Decl. ¶ 14, ECF No. 35-1 (For IMI-Pendleton, drivers arrived twenty minutes early, and for IMI-Stoney Creek, IMI-North Anderson, and IMI-Anderson, drivers arrived thirty minutes early).[5] The twenty-to-thirty-minute gap between clock-in and reporting times entailed the pre-trip inspection as well as the commute from the shop to the quarry worksite. ECF No. 36 at 2. According to S&H Trucking's secretary, Ms. Patty Huntzinger ("Ms. Huntzinger"), "[i]f a driver clocked in for quarry work earlier than the [designated] clock-in time, S&H Trucking would adjust the Driver's Daily Report start time based on th[e] schedule." Huntzinger Decl. ¶ 14, ECF No. 35-1. These adjustments were recorded in the "Time in" section of the DDR. *Id.* ¶ 17. For each quarry load he hauled, Mr. Shepler received two tickets from IMI: one to deliver to IMI's customer and one to submit to S&H Trucking at the end of the day. ECF No. 47 at 2; Shepler Dep. 42:24–43:3, ECF No. 47-2.

Asphalt work destinations, on the other hand, were usually listed as E&B Paving. Like quarry work, drivers scheduled for asphalt work were required to arrive at the shop

---

[4] Mr. Shepler's responsive brief states that "drivers were required to be at the S&H shop around 6:15 a.m.," which we interpret to comport with S&H Trucking's representation. ECF No. 47 at 1. Mr. Shepler has not otherwise contested S&H Trucking's clock-in schedule.

[5] To illustrate, if a driver were scheduled to work at IMI-Stoney Creek with a quarry reporting time of 7:00 a.m., his clock-in time would be 6:30 a.m., and under the "Job Name" column on his DDR, the driver would handwrite "IMI-Stoney Creek." *E.g.*, Shepler Driver's Daily Reports at 15, ECF No. 35-5.

6

approximately thirty minutes prior to their asphalt plant reporting time. Shepler Dep. 37:22–38:2, ECF No. 47-2. We do not know, however, if S&H Trucking adjusted start times for asphalt work similar to its recording of quarry work. When Mr. Shepler arrived at the asphalt plant, E&B Paving provided him with a load ticket and a handwritten timecard, on which E&B Paving recorded the time Mr. Shepler started and completed a particular job. These timecards were returned to the shop with Mr. Shepler at the end of his shift.

At the end of both quarry and asphalt workdays, Mr. Shepler returned to the shop, completed a post-trip inspection of his vehicle, and clocked out. Before departing for the evening, he turned in his DDR and either his quarry load tickets or his asphalt timecard to S&H Trucking's President, Mr. Jeff Huntzinger ("Mr. Huntzinger"). ECF No. 36 at 2; ECF No. 47 at 2–3.

B.  **Tracking Hours and Calculating Pay**

The work Mr. Shepler performed for S&H Trucking was governed by a collective bargaining agreement ("CBA"), effective April 1, 2017, through March 31, 2022, and an Addendum to the CBA ("Addendum"), executed on August 24, 2017, with retroactive application. ECF No. 36 at 1; ECF No. 35-4 at 2. The CBA required S&H Trucking's employees, including Mr. Shepler, to join the International Brotherhood of Teamsters, Local Union No. 135 ("Union"). The CBA plus the Addendum outlined the methods by which S&H Trucking paid its employees for different types of work.

All non-overtime quarry work was "paid at 25% of the tonnage rate," while non-overtime asphalt work was paid at a regular hourly rate of $29.96. ECF No. 35-4 at 3; Shepler. Dep. 39:3–4, ECF No. 47-2 ("[W]e made 25 percent of whatever the truck made

7

per load."). Additionally, asphalt work travel time was paid separately: Drivers made $15.45 per hour for time spent traveling to and from the asphalt plant and to and from the site of the asphalt road work. Huntzinger Decl. ¶ 15, ECF No. 35-1.

The CBA also provided for overtime compensation for certain hourly work at either one-and-a-half times the hourly rate or the double-time rate. ECF No. 36 at 3. For instance, the one-and-one-half overtime rate for asphalt work was $44.94 per hour. *See* ECF No. 47 at 1. Because quarry work was compensated on a percentage basis, S&H Trucking calculated overtime differently, using the coefficient method to determine the appropriate overtime rate. ECF No. 36 at 5. The coefficient method is a mathematic shortcut sanctioned by the Department of Labor and applied to calculate extra half-time pay for work that is not compensated on an hourly basis. ECF No. 36 at 5 n.1; ECF No. 35-6 at 2.

To track Mr. Shepler's quarry and asphalt hours and ensure accurate pay, S&H Trucking used Mr. Shepler's DDRs to determine the total number of hours he worked each day. Huntzinger Decl. ¶ 12, ECF No. 35-1. Regardless of the type of work Mr. Shepler completed, S&H Trucking included as hours worked the total number of hours between Mr. Shepler's clock-in and clock-out times. *Id.* ¶ 13.

S&H Trucking relied on the quarry load tickets and asphalt timecards to determine the correct rate of pay for Mr. Shepler's time and inputted these values into QuickBooks, a small business accounting software. *Id.* ¶ 19. S&H Trucking also plugged Mr. Shepler's hours into a driver's log, which it maintained electronically in an Excel workbook. *Id.* ¶¶ 20–21. The driver's log designated spaces to record a driver's quarry loads; the total invoice amount; hours worked in "pit time, travel time, state asphalt work, or other types of work";

8

and overtime and double-time pay for state asphalt work and other work compensated at an hourly rate. *Id.* ¶¶ 22–24. S&H Trucking used the driver's quarry loads and total invoice amount to calculate the driver's twenty-five percent commission. *Id.* ¶ 22. Because drivers earned different rates for asphalt work and travel time, S&H Trucking used the timecards from E&B Paving to determine which hours were to be compensated at either the asphalt rate or the travel time rate.

S&H Trucking submitted this timekeeping data from QuickBooks to Paylocity Corporation ("Paylocity"), a third-party payroll company, and Paylocity ultimately generated Mr. Shepler's weekly paychecks. *Id.* ¶¶ 28, 31. For every paycheck, Mr. Shepler received a printout of the driver's log and a pay slip. *Id.* ¶ 25.

### C. This Litigation

Mr. Shepler initiated this action against S&H Trucking on November 28, 2021, alleging that S&H Trucking had not paid him for overtime hours in violation of the FLSA. Compl. at 4, ECF No. 1. On January 27, 2023, S&H Trucking filed a Motion for Summary Judgment, which has been fully briefed and is now ripe for ruling.

### III. LEGAL DISCUSSION AND ANALYSIS

The FLSA requires employers to pay overtime compensation for workweek hours above forty "at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). An employee's "regular rate" is the hourly rate computed "by dividing [the] total remuneration for employment . . . in any workweek by the total number of hours actually worked . . . ." 29 C.F.R. § 778.109; *id.* § 778.118 (regular rate for commission-based work calculated in the same way). To establish that an employer

9

has failed to provide overtime compensation, an employee must show that (i) he worked overtime without compensation; and (ii) the employer knew or should have known of the overtime work. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176–77 (7th Cir. 2011). The employee bears the burden of showing that he performed overtime work for which he was not properly compensated. *Castagnoli v. The Center for Neurosciences, LLC*, 2015 WL 9450815 (N.D. Ind. Dec. 23, 2015). In cases where the employee alleges that his employer's records are inaccurate, he must show that he performed work for which he was improperly compensated with evidence sufficient to establish "the amount and extent of that work as a matter of just and reasonable inference." *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016) (citations omitted). Once this evidentiary hurdle is satisfied, "the burden shifts to the employer, who must produce evidence of the precise amount of work performed or with evidence to negate the reasonable inference drawn from the employee's evidence." *Tyler v. JP Operations, LLC*, 342 F.Supp.3d 837, 846 (S.D. Ind. 2018) (citing *Melton*, 838 F.3d at 818).

An FLSA plaintiff's burden is not satisfied by "unsupported ipse dixit that is flatly refuted" by the employer's "hard evidence." *Melton*, 838 F.3d at 819 (quotation and alterations omitted). "[G]iven the unlikelihood that an employee would keep his own records of his work hours," he may permissibly rely on his own recollection. *Id.* However, "this does not mean the plaintiff may survive summary judgment where his recollection 'is flatly refuted' by other evidence in the record." *Id.* (quoting *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010)).

10

We note as well that whatever contractual rights an employee may have under a collective bargaining agreement have no bearing on the merits of an FLSA claim. *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1133 (7th Cir. 2017) ("[A]n employee's statutory rights are distinct from his contractual rights and as such must be analyzed separately . . . ."); *Vadino v. A. Valey Engineers*, 903 F.2d 253, 265 (3d Cir. 1990) (As a threshold matter in an FLSA action, courts need not resolve a "dispute concerning the amount of wages that should have been paid under the terms of the collective bargaining agreement."). Here, Mr. Shepler has neither cited the CBA in support of his claim, nor has he disputed S&H Trucking's representations about the terms of the CBA. Our decision, therefore, addresses only the merits of Mr. Shepler's claim regarding S&H Trucking's compliance with the FLSA overtime provisions.

S&H Trucking argues that it tracked and recorded all of Mr. Shepler's hours as calculated from the time that he clocked in each day through the time that he clocked out. ECF No. 36 at 3–4. To support its argument that it tracked all of Mr. Shepler's hours, including those above forty, S&H Trucking relies on Mr. Shepler's DDRs, his Paylocity payroll register, his pay stubs, and his QuickBooks records.[6] Def.'s Reply Supp. Mot. Summ. J. at 4, ECF No. 52 (chart summarizing number of Mr. Shepler's workweek hours as reported in

---

[6] S&H Trucking also submitted a summary of the monthly contributions it made to the Union Health Benefits Fund ("Fund") on Mr. Shepler's behalf. ECF No. 35-3. Under the CBA, S&H Trucking made monthly payments to the Fund based on the total number of hours its employees worked each week. Huntzinger Decl. ¶ 6, ECF No. 35-1. Presumably, the purpose of the Fund report referenced here is to corroborate S&H Trucking's claim that it accurately recorded Mr. Shepler's weekly hours and paid him accordingly. Having reviewed the Fund report, we find that the number of hours listed on the report is indeed consistent with other, more directly relevant records presented to us.

11

his DDRs, his Paylocity payroll register, pay stubs, QuickBooks records, and Health Benefits Contribution report).

Mr. Shepler responds that S&H Trucking omitted from its calculations his overtime hours by failing to count his quarry work travel time, and he identifies twelve weeks that, in his view, create a genuine dispute of material fact. ECF No. 47 at 3–4. These purportedly disputed weeks, however, are belied by S&H Trucking's contemporaneous records demonstrating that his pre- and post-trip hours, including travel time, were included in the calculation of his total hours. We can determine that Mr. Shepler's overtime hours are not omitted from his timekeeping records because S&H Trucking counted each hour between Mr. Shepler's clock-in and clock-out time, as indicated on his DDRs. Moreover, Mr. Shepler has admitted that he started working each workday after he clocked in and that he stopped working after he clocked out. ECF No. 47 at 2–3. His total hours were tallied and tracked in QuickBooks and his driver's log based on information provided by Mr. Shepler, himself—namely his DDRs, load tickets, and asphalt timecards that also identified the services provided that workday. Furthermore, S&H Trucking submitted the data from these records to Paylocity, which generated Mr. Shepler's paychecks, such that his hours were fully reflected in his pay stubs and his Paylocity payroll register. Beyond his bottom line theory, Mr. Shepler has pointed us to no evidence that he worked off-the-clock or that his hours were recorded incorrectly.

Mr. Shepler's brief falls far short in terms of evidence to substantiate his belief that S&H Trucking failed to pay him correctly for certain, on-the-clock travel time. He also has not disputed or otherwise objected to S&H Trucking's use of the coefficient method to

calculate his overtime earnings for quarry work.[7] To the contrary, after expressly recognizing that quarry work was "strictly commissioned" at twenty-five percent and that drivers were not paid "an actual hourly rate," Mr. Shepler concedes that coefficient pay "was basically the[ ] terminology" to describe how S&H Trucking "paid [him] overtime when [h]e worked for the quarry." Shepler Dep. 55:3–5, 158:12–15, ECF No. 47-2.

After careful review of S&H Trucking's records for the challenged weeks, we find as follows:

- **May 10–16, 2021**: Mr. Shepler received pay for 41.1 hours of work, according to his pay stub, ECF No. 47-3 at 19, and his Paylocity payroll register, ECF No. 35-7 at 44. His DDRs are unavailable, and his QuickBooks records have not been provided. ECF No. 52 at 4. In any event, his pay stub reflects that his 1.1 overtime hour was compensated.

- **August 23–29, 2020**: Mr. Shepler received pay for 39.7 hours of work, according to his pay stub, ECF No. 47-3 at 23, and his Paylocity payroll register, ECF No. 35-7 at 47. His DDRs are unavailable, and his QuickBooks records have not been provided. ECF No. 52 at 4. Mr. Shepler has not refuted S&H Trucking's records with

---

[7] Mr. Shepler claims that his overtime for the disputed weeks should be compensated at the rate of $44.94, yet he neglected to explain his contention that the asphalt work overtime rate is also appropriate for his quarry work overtime. ECF No. 47 at 4. The undisputed evidence already establishes that asphalt and quarry work were compensated differently, and Mr. Shepler has not identified evidence to support a reasonable inference that $44.94 is somehow the correct overtime rate for quarry work. His supporting citation to "Ex. D, E, and F" is an enigma to us and falls demonstrably short of satisfying the summary judgment standard previously referenced in this Order. We bear no "duty . . . to scour every inch of the record in search of" Mr. Shepler's evidence. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

evidence establishing that he worked more than forty hours, or that his non-overtime hours were otherwise improperly compensated.

- **November 15–21, 2020**: Mr. Shepler received pay for 57.6 hours of work, according to his DDRs, ECF No. 35-5 at 15–20, his pay stub, ECF No. 47-3 at 25, and his Paylocity payroll register, ECF No. 35-7 at 50. His QuickBooks records have not been provided, ECF No. 52 at 4, but, according to his pay stub and Paylocity payroll register, his 17.6 overtime hours were compensated with coefficient pay.

- **December 6–14, 2020**: Mr. Shepler received pay for 48.7 hours of work, according to his DDRs, ECF No. 35-5 at 25–29, his pay stub, ECF No. 47-3 at 29, and his Paylocity payroll register, ECF No. 35-7 at 50. His QuickBooks records have not been provided, ECF No. 52 at 4, but, according to his pay stub and Paylocity payroll register, his 8.7 overtime hours were compensated with coefficient pay.

- **June 20–26, 2021**: Mr. Shepler received pay for 53.7 hours of work, according to his DDRs, ECF No. 35-5 at 96–100, his pay stub, ECF No. 47-3 at 31, his Paylocity payroll register, ECF No. 35-7 at 55, and his QuickBooks records, ECF No. 47-5 at 26. According to these records, his 13.7 overtime hours were compensated with coefficient pay.

- **August 1–7, 2021**: Mr. Shepler received pay for 47.4 hours of work, according to his DDRs, ECF No. 35-5 at 123–27, his pay stub, ECF No. 47-3 at 43, his Paylocity payroll register, ECF No. 35-7 at 57, and his QuickBooks records, ECF No. 47-5 at 32. According to these records, his 7.4 overtime hours were compensated with coefficient pay.

- **August 22–28, 2021**: Mr. Shepler received pay for 52 hours of work, according to his DDRs, ECF No. 35-5 at 132–36, his pay stub, ECF No. 47-3 at 47, his Paylocity payroll register, ECF No. 35-7 at 57, and his QuickBooks records, ECF No. 47-5 at 35. According to these records, his 12 overtime hours were compensated with coefficient pay.

- **September 12–18, 2021**: Mr. Shepler received pay for 60.1 hours of work, according to his DDRs, ECF No. 35-5 at 144–49, his pay stub, ECF No. 47-3 at 53, his Paylocity payroll register, ECF No. 35-7 at 58, and his QuickBooks records, ECF No. 47-5 at 38. According to these records, his 20.1 overtime hours were compensated with coefficient pay.

- **October 3–9, 2021**: Mr. Shepler received pay for 49.9 hours of work, according to his DDRs, ECF No. 35-5 at 164–68, his pay stub, ECF No. 47-3 at 59, his Paylocity payroll register, ECF No. 35-7 at 58, and his QuickBooks records, ECF No. 47-5 at 41. According to these records, his 9.9 overtime hours were compensated with coefficient pay.

- **October 17–23, 2021**: Mr. Shepler received pay 50 hours of work, according to his pay stub, ECF No. 47-3 at 61, his Paylocity payroll register, ECF No. 35-7 at 59, and his QuickBooks records, ECF No. 47-5 at 43. His DDRs have either not been produced or, if they exist in the record, neither party has identified which of the one hundred and eighty-seven pages constitute these DDRs. *See* ECF No. 35-5. Though we cannot verify the types of work Mr. Shepler worked during this week, the record

reflects 1 hour of travel time and 49 quarry work hours. His overtime hours were compensated by coefficient pay.

- **November 15–21, 2021**: Mr. Shepler received pay for 44.6 hours of work, according to his DDRs, ECF No. 35-5 at 174–78, his Paylocity payroll register, ECF No. 35-7 at 59, and his QuickBooks records, ECF No. 47-5 at 47. Mr. Shepler has not produced his pay stub for this week. ECF No. 52 at 4, but his Paylocity payroll register and QuickBooks records show that he was compensated for his overtime asphalt hours.

- **December 6–14, 2021**: Mr. Shepler voluntarily terminated his employment on November 29, 2021, and we have been shown no evidence in the record establishing that he worked or received payment after that date. *See* Shepler Dep. 117:22–118:5, ECF No. 47-2.

Based on S&H Trucking's records, we find that S&H Trucking accurately and completely tracked all of Mr. Shepler's quarry and asphalt work time, including his pre- and post-trip time and his travel time. S&H Trucking correctly compensated his quarry overtime with coefficient pay, as authorized by the Department of Labor, and his asphalt overtime with the time-and-a-half rate of $44.94. Mr. Shepler has not come forward with any evidence establishing, as a matter of just and reasonable inference, that S&H Trucking violated the FLSA.[8]

---

[8] Mr. Shepler's failure to prove an essential element—that he was not compensated for overtime hours—"renders all other facts immaterial," *Celotex*, 477 U.S. at 323, thereby negating the need to evaluate whether S&H knew or should have known about Mr. Shepler's unpaid overtime. Even if this were not the case, Mr. Shepler has not cited the record for any of the facts he alleges in his one-page address of S&H Trucking's purported knowledge. ECF No. 47 at 6.

**CONCLUSION**

For the reasons explicated above, we find that there are no genuine disputes as to any material facts. The undisputed facts indicate that Mr. Shepler clocked in and out at the beginning of each workday before any work and at the end of each workday after completing his work. The undisputed record also clearly establishes that S&H Trucking complied with its obligations under the FLSA by paying Mr. Shepler for every hour he worked, including any overtime, at the appropriate rate.

Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 35. A final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:  8/11/2023

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Amber K. Boyd
Amber K. Boyd Law
amber@amberboydlaw.com

James H. Hanson
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
jhanson@scopelitis.com

Karen B. Reisinger
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
kreisinger@scopelitis.com